## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MELBIN JAVIER OCHOA, *et al.* | * |
| | * |
| PLAINTIFFS, | * |
| | * |
| v. | *   Case No.:  1:12-cv-02072-RJL |
| | * |
| DAVID NUYEN, *et al.* | * |
| | * |
| DEFENDANTS | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## FIRST AMENDED COMPLAINT

Plaintiffs Melbin Javier Ochoa ("Ochoa") and Cesar Gaytan Rodriguez ("Rodriguez") (together, "Plaintiffs"), by and through their undersigned counsel, hereby submit their First Amended Complaint against Defendants David Nuyen d/b/a USA Home Champion Realty and d/b/a Opmax ("Nuyen"), USA Home Champion Realty, Inc. ("HCR"), Opmax Management, LLC ("OM"), and Opmax, LLC ("Opmax") (collectively, "Defendants") to recover damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and for damages under the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001 *et seq*. ("DCMWA") as set forth below.

## PARTIES AND JURISDICTION

1. Plaintiffs are each adult resident of the District of Columbia who, at all times relevant, performed all work duties for Defendants in the District of Columbia. Each Plaintiff's consent to participate as a plaintiff in an action under the FLSA is attached hereto as Exhibit 1.

2. Plaintiffs have filed this action against all of their "employers" while they performed property maintenance and related work duties at Defendants' multi-family residential rental properties in Washington, D.C.

3. The FLSA and DCMWA define "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See Del Villar v. Flynn Architectural Finishes,* 664 F.Supp.2d 94, 96 (D.D.C.2009) (Because the DCMWA and FLSA contain nearly identical provisions with respect to employers' liability, the DCMWA is to be construed consistently with the FLSA).

4. HCR is a corporation formed under the laws of the District of Columbia with its principal place of business in the District of Columbia.

5. OM is a limited liability company formed under the laws of the District of Columbia with its principal place of business located in the District of Columbia.

6. Opmax is a limited liability company formed under the laws of the District of Columbia with its principal place of business located in the District of Columbia.

7. At various times during the course of Plaintiffs' employment period, HCR, OM, and Opmax operated several multi-family residential rental properties in Washington, D.C. where Plaintiffs were employed to perform property maintenance and related work duties. As such, HCR, OM, and Opmax were, during various times during Plaintiffs' employment, Plaintiffs' "joint employers" or Plaintiffs' "enterprise employer."

8. The FLSA and DCMWA provide that "an entity employs an individual if it 'suffer[s] or permit[s]' that individual to work." 29 U.S.C. § 203(g). The FLSA and DCMWA acknowledge the existence of joint employer relationships "[w]here the employee performs work which simultaneously benefits two or more employers[ ] ... a joint relationship generally will be considered to exist in situations such as[ ] ... [w]here one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee." 29 C.F.R. § 791.2(b)(2) (footnotes omitted).

9. At all times relevant, HCR, OM, and Opmax shared common management, ownership, and financial control in their operation of the multi-family residential rental properties in Washington, D.C. where Plaintiffs worked.

10. In HCR, OM, and Opmax's operation of the multi-family residential rental properties in Washington, D.C., HCR, OM, and Opmax employed a common and consistent group of employees including, but not limited to, Plaintiffs.

11. At all times during Plaintiffs' employment period, Nuyen was the President and primary owner of HCR, OM, Opmax, and each of the multi-family residential rental properties in Washington, D.C. where Plaintiffs performed work duties.

12. At all times during the period of Plaintiffs' employment, Nuyen had the power to hire, fire, suspend, and otherwise discipline Plaintiffs.

13. At all times during the period of Plaintiffs' employment, Nuyen supervised Plaintiffs' work duties to ensure Plaintiffs' work was of sufficient quality.

14. At all times during the period of Plaintiffs' employment, Nuyen set and controlled Plaintiffs' work schedule.

15. At all times during the period of Plaintiffs' employment, Nuyen set and determined Plaintiffs' rate and method of pay.

16. At all times during the period of Plaintiffs' employment, Nuyen maintained what few employment records exist relating to Plaintiffs or caused such records to be maintained.

17. At all times during the period of Plaintiffs' employment, Nuyen controlled, and was in charge of, the day-to-day operations of HCR, OM, Opmax and each of the multi-family residential rental properties in Washington, D.C. where Plaintiffs performed work duties.

18.     At all times during Plaintiffs' employment, Defendants were engaged in commerce or in the production of goods for commerce within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. § 203(s)(1)).

19.     Each year during Plaintiffs' employment, Defendants' gross revenue exceeded $500,000.00 and thus Defendants qualified as an "enterprise" within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r)).

20.     At all times during Plaintiffs' employment with Defendants, each Plaintiff was an individual employee who, while engaged in his employment duties, handled, sold, and otherwise worked on goods and materials that were moved in or produced for commerce thus Plaintiffs were each individual employees who were engaged in commerce or the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

21.     Pursuant to the foregoing, at all times, all four (4) Defendants were Plaintiffs' "employers," "joint employer," and "enterprise employer" for purposes of the FLSA and DCMWA.

22.     This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29 U.S.C. §216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce." Subject matter jurisdiction is invoked under 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## EQUITABLE TOLLING

23.     At all times during the course of Plaintiffs' employment with Defendants, Defendants did not post or otherwise make visible or available at Defendants' places of business any poster or information that notified employees of the Federal or District of Columbia overtime compensation requirement.

24. At all times during the course of Plaintiffs' employment with Defendants, Defendants did not post or otherwise make visible or available at Defendants' places of business any poster or information that notified employees of any enforcement remedies available to employees who are not paid by employers as required by Federal or District of Columbia Law, including notification that the Department of Labor may recover back wages on behalf of employees or that underpaid employees have a private right of action to file a lawsuit against employers for nonpayment or underpayment of wages in violation of Federal and District of Columbia Law.

25. At all times during the course of Plaintiffs' employment with Defendants, Defendants did not post or otherwise make visible or available at Defendants' places of business any poster or information that notified employees of the fact that Federal and District of Columbia Law prohibits discriminating against, retaliating against, or discharging workers who file a Complaint or participate in any proceeding to recover unpaid or underpaid wages under Federal or District of Columbia Law.

26. At all times during Plaintiffs' employment, Defendants explicitly advised Plaintiffs that Plaintiffs were not entitled to be paid for overtime hours worked each week in excess of forty (40) at the Federally and District of Columbia required overtime pay rate of one-and-one-half (1½) times their regular rate of pay.

27. In consideration of the foregoing, it is proper to toll Plaintiffs' Federal and District of Columbia overtime claims to include the entirety of each Plaintiff's employment with Defendants.

## FACTS

28. Ochoa was employed by Defendants from approximately March 1, 2009 through January 22, 2013 (approximately 203 weeks).  At all times during Ochoa's employment, Ochoa regularly and customarily worked approximately sixty-six (66) hours per week.  At all times during Ochoa's employment, Defendants paid Ochoa at his regular rate of pay in the amount of $10.00 per hour for all hours worked each week including overtime hours worked each week in excess of forty (40).

29. At no time did Defendants ever pay Ochoa his "half time" premium in the amount of $5.00 per hour extra for overtime hours worked each week in excess of forty (40).  Each week that Ochoa worked, Defendants owe Ochoa unpaid overtime wages in the amount of $130.00 ($5.00 per week "half time" owed per overtime hour * 26 overtime hours per week = $130.00).  As of the date of this Complaint, Defendants owe Ochoa overtime wages in the amount of $26,390.00 ($130.00 per week * 203 weeks = $26,390.00).

30. Rodriguez was employed by Defendants from approximately March 1, 2007 through January 28, 2013 (approximately 307 weeks).  At all times during Rodriguez's employment, Rodriguez regularly and customarily worked approximately seventy-two (72) hours per week.  At all times during Rodriguez's employment, Defendants paid Rodriguez at his regular rate of pay in the amount of $10.00 per hour for all hours worked each week including overtime hours worked each week in excess of forty (40).

31. At no time did Defendants ever pay Rodriguez his "half time" premium in the amount of $5.00 per hour extra for overtime hours worked each week in excess of forty (40).  Each week that Rodriguez worked, Defendants owe Rodriguez unpaid overtime wages in the amount of $160.00 ($5.00 per week "half time" owed per overtime hour * 32 overtime hours per

week = $160.00).  As of the date of this Complaint, Defendants owe Rodriguez overtime wages in the amount of $48,800.00 ($160.00 per week * 307 weeks = $49,120.00).

32. At all times during Plaintiffs' employment, Defendants had knowledge of all hours Plaintiffs worked and suffered or permitted Plaintiffs to work all hours alleged.

33. At no time during Plaintiffs' employment with Defendants did Plaintiffs perform work duties that would make them exempt from the overtime compensation requirement of the FLSA or DCMWA.

34. An employer who violates the FLSA and DCMWA overtime provisions are ordinarily "liable to the employee or employees affected in the amount of their unpaid minimum wages ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

35. The award of liquidated damages is mandatory unless "the employer shows to the satisfaction of the court that the act or omission giving rise [to the FLSA action] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260.

36. The good faith defense to liquidated damages requires "an affirmative showing of a genuine attempt to ascertain what the law requires," not simply the absence of bad faith. *Danesh v. Rite Aid Corp.*, 39 F.Supp.2d 7, 13 (D.D.C.1999) (citation omitted).

37. Here, Defendants' failure to pay Plaintiffs overtime wages as required by Federal Law and District of Columbia Law was not the product of good faith and Defendants had no reasonable grounds for believing their failure to pay Plaintiffs overtime compensation at the legal rate was in compliance with Federal or District of Columbia law.

38. Defendants cannot meet their burden of an affirmative showing to avoid the imposition of liquidated damages.  As such, in addition to his unpaid overtime wages, each Plaintiff is entitled to liquidated damages in an equal amount to his unpaid overtime wages under the FLSA and DCMWA..

39. The FLSA and DCMWA are "fee shifting" statutes, directing an award of payment of attorney's fees and costs by Defendants to the successful Plaintiff(s).  As such, the FLSA provides that a court "***shall***, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b) (emphasis added).  In contrast to other fee-shifting statutes where the award of attorney's fees and costs is discretionary with the court, an award of attorney's fees to a prevailing plaintiff in a FLSA case is mandatory.  *See Hensley v. Eckerhart*, 461 U.S. 424 (1983).

40. "[A] reasonable fee is the number of hours reasonably expended on the litigation case multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433.

41. The product of a reasonable number of hours times a reasonable hourly rate is known as the "lodestar". *Id*. at 434.

42. In the District of Columbia, reasonable hourly rates are based on the schedule or attorney's fee rates originally adopted by this Court in *Laffey v. American Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), commonly referred to as the "*Laffey* Matrix."

43. In addition to unpaid wages and liquidated damages in an equal amount, Plaintiffs are entitled to payment, by Defendants, of their attorney's fees and costs, using the "lodestar method" and applying the "*Laffey* Matrix."

## CAUSES OF ACTION

### COUNT I
### Violation of Federal Fair Labor Standards Act
### (Overtime)

44. Plaintiffs re-allege and reassert each and every allegation set forth in Paragraphs 1-43 above, as if each were set forth herein.

45. The FLSA mandates that an employer must pay employees overtime wages in the amount of one-and-one-half (1½) times the employee's regular rate of pay for all overtime hours worked each week in excess of forty (40).

46. At all times, Plaintiffs were "employees" covered by the FLSA, 29 U.S.C. § 207(a)(1), and all four (4) Defendants were Plaintiffs' "employers," "joint employers" or "enterprise employer" under FLSA, 29 U.S.C. § 207(a)(2).

47. Defendants, as Plaintiffs' employers, were obligated to compensate Plaintiffs at the overtime rate of one-and-one-half (1½) times Plaintiffs' regular rate of pay for all hours worked per week in excess of forty (40).

48. As set forth above, while in Defendants' employ, Plaintiffs worked many overtime hours each week in excess of forty (40).

49. As set forth above, Defendants failed and refused to compensate Plaintiff properly, and as required by the FLSA, for all overtime hours worked each week in excess of forty (40).

50. Defendants' failure and refusal to pay Plaintiff as required by the FLSA was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs under Count I for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## **COUNT II**
### **Violation of D.C. Minimum Wage Act Revision Act of 1992**
### **(Overtime)**

51. Plaintiffs reallege and reassert each and every allegation set forth in Paragraphs 1-50 above, as if each were set forth herein.

52. Plaintiffs were Defendants' "employees," and all four (4) Defendants were Plaintiffs' "employers," "joint employer," or "enterprise employer" within the meaning of the DCMWA, D.C. Code §§ 32-1001 *et seq*.

53. Defendants, as Plaintiffs' employers under the DCMWA, were obligated to compensate Plaintiffs at the overtime rate of one-and-one-half (1½) times Plaintiff's regular rate of pay for all hours worked per week in excess of forty (40).

54. As set forth above, while in Defendants' employ, Plaintiffs worked many overtime hours each week in excess of forty (40).

55. As set forth above, Defendants failed and refused to compensate Plaintiffs properly, and as required by the DCMWA, for all overtime hours worked each week in excess of forty (40).

56. Defendants' failure and refusal to pay Plaintiff as required by the DCMWA was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs, under Count II, for all unpaid overtime wages in such an amount to be proven at trial, plus liquidated damages in an equal amount, interest (both pre- and post-judgment), attorney's fees, costs, and any other and further relief this Court deems appropriate.

## COUNT III
### (Violation of FLSA – Unlawful Retaliation Against Ochoa)

57. Plaintiffs re-allege and reassert each and every allegation set forth in Paragraphs 1-56 as if each were set forth herein.

58. FLSA section 215(a)(3) provides, in relevant part: "[I]t shall be unlawful for any person… to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter…"

59. On or about January 2, 2013, Ochoa and the other named Plaintiffs filed the instant action against Defendants seeking damages against Defendants under the FLSA.

60. On or about January 21, 2013, Defendants received notice that Plaintiffs had filed an FLSA action against Defendants.

61. At or about 9:00 AM on January 22, 2013, Nuyen aggressively approached Ochoa at Defendants' place of business in Washington, D.C. with a copy of the Complaint and Summons.

62. In this encounter, Nuyen pointed to the Complaint then back at Ochoa and announced to Ochoa that Nuyen "didn't need [Ochoa] anymore" and that Nuyen "didn't want to see [Ochoa] around [Defendants' work facilities] anymore."

63. In this same encounter, Defendants terminated Ochoa's employment.

64. Defendants terminated Ochoa's employment in retaliation for Ochoa filing a Complaint seeking unpaid wages and FLSA damages in the United States District Court for the District of Columbia.

65. Defendants acted in bad faith in retaliating against Ochoa and terminating Ochoa's employment for filing an FLSA Complaint seeking redress for Defendants' failure and refusal to abide by the compensation requirements of the FLSA.

66. As a result of Defendants' unlawful termination of Ochoa's employment, Ochoa has lost wages and continues to lose wages. Ochoa has also suffered and continues to suffer severe mental anguish, embarrassment, and other damages as a result of Defendants' retaliatory termination of Ochoa's employment.

WHEREFORE, Ochoa prays that he be awarded judgment on Count III of Plaintiffs' First Amended Complaint against Defendants, jointly and severally, in the amount of One Hundred Fifty Thousand Dollars ($150,000.00) for compensatory damages and One Hundred Fifty Thousand Dollars ($150,000.00) in punitive damages, as well as attorney's fees, the costs of this action, and any further relief this Court deems appropriate.

### COUNT IV
### (Violation of FLSA – Unlawful Retaliation Against Rodriguez)

67. Plaintiffs re-allege and reassert each and every allegation set forth in Paragraphs 1-66 as if each were set forth herein.

68. FLSA section 215(a)(3) provides, in relevant part: "[I]t shall be unlawful for any person… to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter…"

69. On or about January 2, 2013, Rodriguez and the other named Plaintiffs filed the instant action against Defendants seeking damages against Defendants under the FLSA.

70. On or about January 21, 2013, Defendants received notice that Plaintiffs had filed an FLSA action against Defendants.

71. At or about 9:30 AM on January 22, 2013, Nuyen approached Rodriguez at Defendants' place of business in Washington, D.C. with a copy of the Complaint and Summons.

72. In this encounter, Nuyen directed Rodriguez that if Rodriguez did not drop his FLSA lawsuit against Defendants and sign an "independent contractor agreement," Rodriguez's employment would be terminated.

73. In response, Rodriguez requested a couple days to consider his options.

74. On Monday January 28, 2013, Defendants' manager and agent Sung Dang approached Rodriguez and informed Rodriguez that if Rodriguez did not dismiss the FLSA lawsuit, Rodriguez's employment would be terminated.

75. On Monday January 28, 2013, Rodriguez confirmed to Defendants that he would not dismiss his FLSA lawsuit and after Rodriguez confirmed his intention to not dismiss the lawsuit, Defendants terminated Rodriguez's employment.

76. Defendants terminated Rodriguez's employment in retaliation for Rodriguez filing a Complaint seeking unpaid wages and FLSA damages in the United States District Court for the District of Columbia.

77. Defendants acted in bad faith in retaliating against Rodriguez and terminating Rodriguez's employment for filing an FLSA Complaint seeking redress for Defendants' failure and refusal to abide by the compensation requirements of the FLSA.

78. As a result of Defendants' unlawful termination of Rodriguez's employment, Rodriguez has lost wages and continues to lose wages. Rodriguez has also suffered and continues to suffer severe mental anguish, embarrassment, and other damages as a result of Defendants' retaliatory termination of Rodriguez's employment.

WHEREFORE, Rodriguez prays that he be awarded judgment on Count IV of Plaintiffs' First Amended Complaint against Defendants, jointly and severally, in the amount of One Hundred Fifty Thousand Dollars ($150,000.00) for compensatory damages and One Hundred Fifty Thousand Dollars ($150,000.00) in punitive damages, as well as attorney's fees, the costs of this action, and any further relief this Court deems appropriate.

Respectfully submitted,

___/s/ Gregg C. Greenberg_____
Philip B. Zipin, Bar No. 367362
Gregg C. Greenberg, Bar No. MD17291
The Zipin Law Firm, LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
Phone: 301-587-9373
Fax: 301-587-9397
Email: pzipin@zipinlaw.com
ggreenberg@zipinlaw.com

*Counsel for Plaintiffs*